***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act;
2. An employee-employer relationship existed between the employee and the employer;
3. The carrier liable on this risk is correctly named above;
4. The employee's average weekly wage will be determined from an I.C. Form 22 Wage Chart;
5. The employee sustained an injury on or about April 24, 2001, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began her employment with the defendant-employer, on April 9, 2001. She worked as a Processor B at defendant's Oxford, North Carolina facility.
2. On April 24, 2001, while walking through defendant-employer's cafeteria on her lunch break, the plaintiff slipped on some moisture on the floor and fell, striking her left knee on the floor, thereby sustaining an injury by accident arising out of and in the course of her employment with the defendant-employer.
3. The plaintiff immediately reported the accident to defendant-employer's Office of Occupational Health Safety. While there, she was treated by Regina Ford, a registered nurse. The plaintiff called Ms. Ford later that afternoon with complaints of back pain, and Ms. Ford scheduled an appointment for her at Granville Family Medical Clinic for the following day.
4. On April 25, 2001, the plaintiff was treated at Granville Family Medical Clinic by physician's assistant, David Lewis. She was diagnosed with a left knee contusion and low back strain. The attending physician, Dr. Michael Mahan, released the plaintiff to work with restrictions on bending and lifting. She returned to Revlon and worked light duty in her department from April 25, 2001 through April 27, 2001.
5. On May 1, 2001, the plaintiff treated again at Granville Family Medical Clinic, where she reported "vast improvement." With the approval of Dr. Mahan, P.A. Lewis released the plaintiff to full duty. She returned to Revlon that day and began working in her regular position as a Processor B. She worked in that position without complaint from May 1, 2001 to May 17, 2001.
6. Shortly after her return, the plaintiff's supervisor, Andy Hargrove, knowing of her recent fall and notwithstanding her release to full duty, offered the plaintiff a lighter duty position on the packaging floor. Responding that she was fine and that she could perform her Processor B duties, the plaintiff declined. According to the testimony of Dr. Robert Esposito, given the condition of the plaintiff's back, the position offered by Mr. Hargrove was suitable for the plaintiff to work eight hours per day had she chosen to accept that position.
7. On Friday, May 18, 2001, the plaintiff called defendant to report that she would not attend work because of her back pain. Ms. Ford responded by making plaintiff an appointment at the Duke Orthopedic Clinic.
8. On Monday, May 21, 2001, the plaintiff was examined by Dr. Martin Luber at the Duke Orthopedic Clinic in Butner-Creedmoor. Dr. Luber diagnosed the plaintiff with a lumbar strain and a contusion to the left knee. He prescribed physical therapy and medication and wrote plaintiff out of work for four weeks. Dr. Luber was not a regular doctor at Duke Orthopedic Clinic. Rather, he was a substitute physician who, according to Duke Orthopedic Clinic's chief physician, Dr. George Aitken, specialized in sports medicine. Additionally, Dr. Luber was not the physician that defendant intended the plaintiff to see. Instead, defendant intended the plaintiff to be examined by Dr. Aitken, who has personally visited defendant's Oxford plant and who was far more familiar with the range and demands of jobs at that facility, as well as defendant's transitional work program that puts injured employees in light duty and transitions them back to full duty as they are able.
9. Pursuant to Dr. Luber's instructions, the plaintiff was out of work for two weeks, from May 21, 2001 to June 1, 2001. Defendants paid the plaintiff temporary total benefits for the week of Monday, May 28 through Sunday, June 3. No benefits were paid for the first week pursuant to the waiting period of N.C. Gen. Stat. § 97-28.
10. By Friday, June 1, 2001, orthopedic surgeon Dr. Aitken returned to Duke Orthopedic Clinic from vacation. Since Dr. Luber's four week write out was so unusual given the nature of the plaintiff's diagnosis, the defendant-employer sent the plaintiff back to Duke Orthpedic Clinic so that she could be examined by Dr. Aitken. In examining the plaintiff, Dr. Aitken was able to employ both his education and experience as an orthopedic surgeon and his personal knowledge of defendant's Oxford Facility and the physical demands of its various positions. On Friday, June 2, 2001, Dr. Aitken examined the plaintiff, and he confirmed Dr. Luber's diagnosis of back strain. He also released the plaintiff to light duty work.
11. Despite being released to work by Dr. Aitken on Friday, June 1, 2001, the plaintiff did not report for work on Monday, June 4, 2001. On Tuesday, June 5, 2001, the defendant-employer received a fax from the plaintiff's personal physician placing her on medical leave from June 4, 2001 through June 13, 2001. This leave was based on the plaintiff's contraction of bronchitis or pneumonia and was completely unrelated to her fall while working for defendant.
12. At the end of the medical leave approved by her personal physician, the plaintiff never reported back to work; never contacted Regina Ford regarding ongoing back problems; never requested further medical treatment for her back; and never contacted her supervisor, Andy Hargrove, about her absence or to explore light duty work.
13. Additionally, the plaintiff canceled all future physical therapy appointments after June 1, 2001 as well as a follow-up appointment with Dr. Aitken scheduled for July 2, 2001. In response to the plaintiff's refusal to cooperate with her treatment, Karen Ross of RSKCo wrote the plaintiff a letter dated July 5, 2001. The letter stated that because the plaintiff had canceled her appointment, Ms. Ross assumed that no further medical care was needed. The letter advised the plaintiff that her claim would be closed in ten days if she did not contact RSKCo regarding a need for further care. The plaintiff never responded to the letter and never called or otherwise contacted Ms. Ross about ongoing back problems. After several more weeks passed, Ms. Ross filed a Form 28B closing out the claim on August 23, 2001.
14. In August 2001, Jeanette Brummitt of defendant telephoned the plaintiff. She told the plaintiff that the most current documentation defendant had received indicated that the plaintiff had been released to work as of June 13, 2001. Ms. Brummitt advised the plaintiff that she needed to submit updated medical information regarding her continued absence. The plaintiff never submitted the requested documentation, nor did she otherwise respond.
15. In a letter dated September 4, 2001 and addressed to the plaintiff, Ms. Brummitt noted that the plaintiff had failed to respond to defendant's request for updated medical records. She also notified the plaintiff that pursuant to company policy, defendant assumed that she had voluntarily resigned as of June 13, 2001. Similar to all previous correspondence, the plaintiff never responded to this letter.
16. Having been advised by Ms. Ford on May 18, 2001 that she had a right to consult with her own physician at her own expense, the plaintiff treated with Dr. Robert Esposito, an orthopedic surgeon. Dr. Esposito saw the plaintiff on three occasions. Each time he noted that her neurological exam was "normal." He had an MRI conducted and referred her to Dr. Lloyd Hey of the Duke Orthopedic Clinic. Dr. Esposito expected plaintiff's type of injury to have a twelve-week recovery.
17. By the end of August 2001, the back strain sustained by the plaintiff as a result of her fall while working for defendant had resolved. At the very latest, the plaintiff's work related injury resolved by January 10, 2002, the date on which she was treated by Dr. Lloyd Hey of the Duke Orthopedic Clinic. He opined that on that date the only problem with the plaintiff's back was chronic degenerative disc disease, which was unrelated to her fall while working for defendant, and the fall would not have accelerated the degenerative disc process.
18. On May 10, 2002, Dr. Andrew Bush, an orthopedic surgeon, confirmed Dr. Hey's diagnosis that the only problem with the plaintiff's back was degenerative disc disease, and that her fall had no relevant impact on the progression of that unrelated problem. During Dr. Bush's examination of the plaintiff, he found her to be non-compliant, and he could not determine the level of plaintiff's back problems because the examination did not make any sense. Dr. Bush further found no indication of injury, and opined that the plaintiff's work injury did not cause her degenerative disk disease, nor was her disk herniation caused by the fall at work on April 24, 2001.
19. At no time after June 1, 2001 did the plaintiff's work-related injury cause her to miss work. She was released to light duty work on that date. However, for reasons unrelated to her fall while working for defendant, the plaintiff never again presented to defendant for work; never again sought medical care to be directed by defendant; never confirmed the existence of work within her restrictions; and made no known effort to contact Regina Ford, Andy Hargrove, Jeanette Brummitt or Karen Ross.
20. After leaving Revlon, the plaintiff made no attempts to procure other employment.
21. The greater weight of the evidence establishes that plaintiff's current back condition and degenerative disk disease is not a result of her original compensable injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes following:
 CONCLUSIONS OF LAW
1. On April 24, 2001, plaintiff suffered an injury by accident arising out of and in the course and scope of her employment at the defendant-employer, resulting in a back strain. N.C. Gen. Stat. § 97-2(6).
2. As a result of the accident, the plaintiff missed two weeks of work, from May 21, 2001 to June 1, 2001. The defendants paid the plaintiff temporary total benefits for the week of Monday, May 28 through Sunday, June 3, 2001. No benefits were paid for the first week pursuant to the waiting period of N.C. Gen. Stat. § 97-28. N.C. Gen. Stat. § 97-29.
3. The plaintiff has failed to establish that she is disabled as a result of her work related injury. She has not met her burden in proving (1) that she is incapable of work in any employment, (2) that she is capable of some work, but has, after a reasonable effort, been unsuccessful in obtaining employment, (3) that "preexisting conditions" make efforts to obtain employment futile, or (4) that she has obtained employment at a wage less than earned prior to her injury. Russell v.Lowe's Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. The plaintiff voluntarily resigned from the defendant-employer as of June 13, 2001. This resignation constitutes an unjustified refusal of suitable employment. In the alternative, the plaintiff was terminated by the defendant-employer because she failed to produce medical documentation authorizing her lengthy and continuous absence from work. Additionally, she was non-responsive to defendant's and RSKCo's repeated attempts to communicate with her during June, July, August and September, 2001. This termination constitutes a constructive refusal of suitable employment.
5. Having failed to establish disability, the plaintiff is entitled to no disability benefits in addition to those already received for her absence between May 21, 2001 and June 1, 2001. N.C. Gen. Stat. § 97-29.
6. At the latest, the plaintiff's work-related back strain resolved completely by January 10, 2002.
7. The plaintiff is not entitled to have the defendant-employer pay for her medical expenses for treatment with personal physicians that were not authorized by the defendant-employer after June 13, 2001 when the plaintiff unjustifiably refused suitable employment. Additionally, the plaintiff never sought or required emergency care, and she never requested approval by the North Carolina Industrial Commission for change of physician. N.C. Gen. Stat. § 97-25.
8. The plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1, as this claim was not unreasonably defended.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's request for additional disability benefits is hereby DENIED.
2. Plaintiff's request for medical expenses based on her treatment with personal physicians is hereby DENIED.
3. Each party shall bear their own costs.
This the ___ day of December 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
PTY:db